Frank W Compagni (A7174)
Bretton L. Crockett (A8573)
MORRISS O'BRYANT COMPAGNI, PC
734 East 200 South
Salt Lake City, Utah 84102
Telephone: (801) 478-0071
Facsimile:  (801) 478-0076
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CANNALOOP SERVICES, LLC and DAN LUTZ, <br><br> Plaintiffs, <br><br> vs. <br><br> JERRY HAYWARD; EDWARD HAYWARD; CIPHERTOOTH, INC. and CONVERTABASE, INC. and DOES 1 to 100, inclusive, <br><br> Defendants. | **COMPLAINT** <br><br> Civil No.: 2:14-cv-00059-PMW <br><br> Magistrate Judge Paul M. Warner <br><br> **JURY TRIAL DEMANDED** |

Cannaloop Services, LLC, and Dan Lutz, (hereinafter collectively referred to as "Plaintiffs") by and through their attorneys, complain against Defendants Jerry Hayward, Edward Hayward, Ciphertooth, Inc., Convertabase, Inc. and DOES 1 to 100, (hereinafter collectively referred to as "Defendants") and hereby allege as follows:

### STATUS OF PARTIES

1.      Plaintiff Cannaloop Services, LLC (hereinafter referred to as "Cannaloop") is a limited liability company organized and existing under the laws of the state of California having a place of business in Los Angeles, California.

2.      Plaintiff Dan Lutz (hereinafter referred to as "Lutz") is a resident of the State of California, and is a principal member/manager of Cannaloop.

3.      Defendant Jerry Hayward is an individual residing in the State of Utah.

4.      Defendant Edward Hayward is an individual residing in the State of Utah.

5.      Defendant Ciphertooth, Inc. (hereinafter referred to as "Ciphertooth") is a corporation organized and existing under the laws of the state of Utah having a place of business in American Fork, Utah.

6.      Defendant Convertabase, Inc. (hereinafter referred to as "Convertabase") is a corporation organized and existing under the laws of the state of Delaware having a place of business in American Fork, Utah.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to the laws of the United States, including title 28 U.S.C. §§ 1332, based on diversity of citizenship and that the matter in controversy exceeds the sum of $75,000.

8.      This Court has personal jurisdiction over the Defendants by virtue of their residence in the state of Utah, their transacting and doing business in the state of Utah, their activity in the state of Utah and causing tortious injury in the state of Utah.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the Defendants are residents of the state of Utah.

## BACKGROUND

A.  The Parties.

10.      On information and belief, Convertabase is a corporation formed by Jerry Hayward doing business in Utah since about 2004.

11.      On information and belief, on or about February 2013, Defendants Jerry Hayward and Edward Hayward formed Ciphertooth with a place of business in American Fork, Utah.  Plaintiffs

2

allege that the Defendants have an ownership interest in Ciphertooth, and that Defendants are operating as a partnership.  Plaintiffs allege that Defendants have unlawfully asserted ownership, dominion, and/or control over the tangible and intangible assets and property of Plaintiffs as alleged in detail in this Complaint.

12.     On information and belief, at about this time, Jerry Hayward first formed the company, EncryptaMe, LLC, which was later changed by Jerry Hayward to Ciphertooth, Inc.  As later set forth herein, EncryptaMe was the name of the software and company to be co-owned by Jerry Hayward and Dan Lutz on a 50-50 basis.

13.     The true names and/or capacities, whether individual, corporate, associate, governmental, or otherwise, of defendants sued herein as DOES 1 through 100, inclusive and each of them, are unknown to Plaintiff.  When the true names and/or capacities of said defendants are ascertained, Plaintiff will seek leave of this Court or follow any State or Local rules, to amend the Complaint accordingly.

14.     On information and belief, except as provided in this Complaint to the contrary, at all times mentioned herein Defendants, including defendants designated herein as a DOE defendants, were responsible, negligently or in some other actionable manner, for the events and happenings herein referred to which proximately caused the damages to the Plaintiff as hereinafter alleged, either through defendants' own negligence or wrongful conduct or through the conduct of its agents, servants, employees or representatives in some other manner.  Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein the Defendants, including defendants designated herein as a DOE defendants were acting as the agents, servants, employees, representatives and/or joint venturers of their co-defendants, and were, as such acting within the course, scope, and authority of said agency, services, employment, representation and/or joint venture in that that each and every defendant, as aforesaid when acting as principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, representative and/or joint venturer, and further

ratified such conduct.  Plaintiff alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages were proximately caused by such defendants, and each of them.

**B. Initial Development of Medi-Match Software.**

15.      On or about 2010, Plaintiffs' started a software development project called "Medi-Match." (aka Med-Match)  Med-Match was to be designed, built, marketed, and otherwise operated with its principal business in the State of California.  The Med-Match project was designed to run the day-to-day operations of an alternative medicine dispensary.  Med-Match would handle patient verification, access control, Point of Sale (POS), inventory systems and controls, and match the medicine to patients based on a system of reviews from other patients and characteristics of the medicine and keep patient information safe with HIPAA level security and privacy.  Med-Match would also connect to hardware for biometric fingerprint access, scales, printers, scanners, signature pads, and cameras.   Dan Lutz was the principal owner/developer of Med-Match (and the subsequent entitles alleged herein).  Med-Match had broad applications as a software system to other collectives and, in due course, particularly with respect to future development for the entire healthcare industry.

16.      On or about November 2010, Med-Match was deployed (on a limited functionality basis) in the marketplace.  The software primarily included just the patient verification and access control.  At the same time, the POS, inventory, medicine matching, and hardware integration development continued to be developed.  The remaining work essentially consisted of "integrating" the software to specific hardware.

17.      Shortly thereafter, the Med-Match project scope expanded to include:

a.      An e-commerce social networking platform with biometric identities that would allow for security and privacy across multiple groups; and

b.      A security and privacy function consisting of Private Identity Tracking though a Reputation Score, Point systems, resolution systems, business tools, and other tools that would allow

for businesses to do private secure transactions with individuals, in which they can be tracked by their biometric identity.

18.     Defendants only ever provided the Medi-Match software to Plaintiffs with limited functionality.  The first delivery of the Medi-Match software occurred approximately three months after Defendants began programming the Medi-Match software.

19.     For the first three months, Defendants were paid in a timely manner.  Over the next few months, Defendants made minor upgrades to the Medi-Match software.

20.     The value of the services provided to Plaintiffs for the initial version(s) of the Medi-Match software are estimated to be approximately $50,000.

21.     In addition, Defendants were supposed to add a social networking system, messaging system and e-commerce business system (herein referred to as "PersonaMe").  Moreover, Defendants were supposed to develop the critical component to the software, namely the encryption system that was required before PersonaMe could be launched.  Defendants never completed PersonaMe and never delivered any of the components of PersonaMe or the encryption component.

22.     In addition, Defendants failed to make the Medi-Match software fully functional.  Specifically, the Medi-Match software is defective.  For example, Plaintiffs cannot change user authorization levels of the Medi-Match software.  Moreover, new users cannot even initiate the software.  This is a critical flaw and one that has not been rectified despite numerous requests by Plaintiffs.  As a result, the good will of Plaintiffs with its dispensaries has been harmed.

23.     Defendants failed to adequately staff the development services for Plaintiffs and therefore could not and have not produced a fully functional software program in a timely manner.

24.     Originally, Plaintiffs made payments on a lump sum basis ranging from between about $10,000 to about $15,000 per month depending on the cash flow of the Plaintiffs.

25.     When it became clear to Plaintiffs that Defendants were understaffing development, failing to provide the PersonaMe and encryption software in a timely manner and not providing critical

upgrades to the Medi-Match software, Plaintiffs demanded and Defendants accepted payments on an hourly, rather than monthly, basis, specifically $50 per programming hour.  Payments under this revised hourly payment arrangement began after about the first year and continued for approximately 1.5 years thereafter.  By accepting payments from Plaintiffs on an hourly rate, Defendants ratified the new payment arrangement.

26.     For the software development services of Defendants, Plaintiffs have paid to Defendants at least approximately $250,000 over approximately a 2.5-year period.

27.     For a two-month period, the parties agreed to allow Plaintiffs to suspend payments to Defendants while the parties explored alternative funding sources.

28.     At most, for the software actually delivered to Plaintiffs, Defendants paid $50,000 in software development services.

29.     Because Defendants have failed to provide any additional software to Plaintiffs, Plaintiffs are entitled to recover at least $200,000 for monies paid to Defendants for software that Defendants have failed to deliver.

30.     Because of Defendants failed to provide critical components in order to make the software fully functional, Plaintiffs have lost out on a number of business opportunities.

31.     For example, Plaintiffs have met with representatives of the State of Nevada who have expressed an interest in Plaintiffs software.  Before striking a deal, however, the Nevada representatives require a demonstration of the software.  Until the software is completed, Plaintiffs cannot perform the required demonstration.  Other similar lost business opportunities have occurred as a direct result of Plaintiffs' failure to provide a fully functional software system.

**C.  Formation of Cannaloop to Design, Operate, and Market Med-Match, and to Expand it into Online Business Social Networking and E-Commerce Businesses called "PersonaMe".**

32.     On or about March 2011, Cannaloop was formed as a management services company which focused on the needs of the alternative medicine industry, included consulting and technology

development.  The Med-Match software, including its expanded use as an e-commerce and Business Social Networking Platform, was, at least initially, to be the primary product of Cannaloop.   Up until this date, Plaintiffs used approximately $40,000 of funding to develop the software primarily using outside software developers.

33.     On or about May to July of 2011, Plaintiffs consulted with Jason Webb of Webb IP Law Group to obtain a patent on the software/hardware project under the name "e-conomy", which was later changed to "PersonaMe."

34.     At said time, Plaintiffs had conversations with Jerry Hayward in Henderson Nevada about the hardware integration (Fingerprint readers, signature capture, scales, …etc.) for the software and the expansion of the project to social networking and ecommerce.  Plaintiffs decided to have the majority of the development of Med-Match, "PersonaMe", (A business that provides highly encrypted biometric identities organized into social networking groups called IndustraMe(s) that allow e-commerce transactions to occur between individuals, while maintaining privacy.) taken over by Jerry Hayward under his company Convertabase, as a "work for hire."  Plaintiff and Jerry Hayward entered into a contractual agreement for his services.  At all times mentioned herein, all work was to be performed for Cannaloop, a California company, for the use, and (at least initially) for sale in the State of California.  At the same time, other developers continued the development of Med-Match, PersonaMe, by working on interface design.

35.     The PersonaMe software is a social-network e-commerce platform that uses biometrics to track individuals digitally through the use of avatars. The avatars would perform these transactions in groups called "IndustraMe's" that target specific industries. The initial IndustraMe's would cover, Alternative Medicine, Medical Doctors offices and Banking, but are not limited to the foregoing.  Each IndustraMe would be a business and have e-commerce functions. The software simultaneously allows the individuals the ability to remain private in their transactions and own their right to their digital footprint; and also allows others in the social group to see the Reputation Score of the person they are

dealing with.  Thus, even if a user is "private", the Reputation Score gives people an idea of the "credibility" of who there are dealing with.  The individual's information is secured through strong encryption that is keyed to their biometric data. This allows only the owner of the information to have access and includes all transactions, communications, and relationships.  The software has wide-ranging functions, applications, and marketing potential (millions of dollars). The software was intended for use in the banking industry, among others.

36.    The rights to the original PersonaMe software was assigned to Plaintiffs per a contract executed by Jerry Hayward.  Various patent applications were also applied for PersonaMe and EncryptaMe.  Moreover, the following events occurred:

A.    A non-disclosure agreement was executed by Jerry Hayward wherein he represented as follows: That, in relevant part, the afore-mentioned software (and as integrated into hardware) were confidential information; To be held in strict confidence; Which shall not be subject to disclosure, dissemination, and/or unauthorized use; That all rights thereto belong to Plaintiffs; and that no intellectual property rights were created for Defendant.  In short, all of the Med-Match and PersonaMe and intellectual property forming the basis thereof, and developed therefrom, was the lawfully owned by Plaintiffs and not Defendant Jerry Hayward or any other persons/entities.

B.    At all prior times, Plaintiffs had caused to be paid approximately $200,000 to Defendant Jerry Hayward and his company Convertabase (and others) for development of the PersonaMe software, trade secrets, and intellectual property rights.

C.    In early 2012, Jerry Hayward executed an assignment of all intellectual property rights to Plaintiff.  The patent attorney drafted and caused to be filed with the United States Patent and Trademark Office an assignment of rights reflecting same.

**D.  "EncryptaMe" - An Offshoot Development of a Specific Feature of "PersonaMe" called an "IndustraMe" for the Banking Sector for Internet Security Purposes.**

37.     Further, on or about late 2011 and March 2013, Plaintiffs and Defendant Jerry Hayward had discussions about using specific features of the previously developed PersonaMe software an IndustraMe for use in the banking sector.  The parties held several meetings in this regard. Specifically, the parties were attempting to address a so-called "man in the middle" Internet attack. This involves a third party essentially intercepting web-based traffic between consumers and financial institutions.  The parties agreed to develop the intellectual property necessary to "combat" or "eliminate" the "man in the middle attacks."

38.     Notwithstanding Plaintiffs sole ownership of the intellectual property previously developed, on or about 2011 or 2012, it was agreed between Plaintiffs and Jerry Hayward that they would enter into a 50-50 partnership to own the intellectual property rights with respect to the software necessary to combat the "main in the middle (as well as other) cyber attacks."  "EncryptaMe" was the tentative name for the new IndustraMe offshoot.   At all times mentioned herein, the parties agreed that partnership was to be a corporate entity which was to be operated at all times as a California corporation.

39.     In 2013, development funds for PersonaMe, and EncryptaMe provided by Cannaloop slowed briefly for a short period of time.  In order to continue development in the interim, Plaintiff and Jerry Hayward agreed that the latter's suggestion to raise $100,000 from an outside third-party in exchange for a 10% ownership interest in EncryptaMe (only) was acceptable to both parties, provided Jerry Hayward could complete development with three months.  This would allow the Internet security software to be used  for the PersonaMe platform.  As alleged herein, Defendant Jerry Hayward breached the agreement and Plaintiffs are therefore sole and exclusive owner (with all rights thereunder) of EncryptaMe.

**E.  Thereafter Defendant Jerry Hayward Formed a New Entity to Unlawfully Misappropriate and complete Development of Plaintiff's Intellectual Property; Breached the Non-Disclosure Agreement; Breached the Partnership Agreement, and raises Funds for himself, Hires his Brother as a Corporate Officer; and Develops and Markets Plaintiffs' Internet Security Software while Concealing same from Plaintiff.**

40.     On or about 2012 and 2013, Defendant Jerry Hayward, after having been paid over approximately $250,000 for his services by Plaintiffs, breached his contractual agreement and usurped the partnership opportunity with Plaintiffs to develop the EncryptaMe internet security software. Specifically Jerry Hayward breached his non-disclosure agreement, attempted to raise the Funds for himself and not for the 50-50 (equal partnership with Plaintiffs, Hired his Brother Edward Hayward as a corporate officer, and continued to develop and market the "man in the middle (and other" internet security software under a new business entity, namely Ciphertooth.  Jerry Hayward actively misrepresented the true facts and concealed his scheme to defraud Plaintiffs of their valuable software, trade secrets, and intellectual property rights.

41.     Plaintiffs allege that Defendants have begun to market the "man in the middle" software to others, and now contend that Plaintiffs only have a 1% equity interest in the afore-mentioned partnership.

42.     As a result of the above breaches of the software services agreement, non-disclosure agreements, and 50-50 EncryptaMe partnership agreement by Defendant Jerry Hayward, Plaintiffs have been damaged in an amount in excess of the jurisdiction of this Court. As a further proximate result of Defendants wrongful conduct and threatened misappropriation, Plaintiffs have been injured, irreparably and otherwise, and is threatened with additional and on-going injuries.  Because Plaintiffs' remedy at law is inadequate, they seek temporary, preliminary and permanent injunctive relief.  As a direct and proximate result of Defendants unlawful misappropriation and taking of the valuable intellectual property and other rights alleged herein, Plaintiffs face the immediate prospect of losing customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may

be impossible to determine, unless Defendants are enjoined and restrained by order of this Court, as alleged above.

43.     Plaintiffs provided to Defendants certain hardware, including but not limited to finger print readers and other computer hardware for use in development and commercialization of the software to be provided by Defendants.  Defendants have not returned this property to Plaintiffs.

44.     Defendants host Plaintiffs' proprietary operational software on a cloud server for the sole benefit of Plaintiffs.  Defendants have prevented and denied Plaintiffs access to their proprietary operational software by denying requests for access codes that would allow Plaintiffs to access their proprietary operational software.  By denying Plaintiffs access to their proprietary operational software, Plaintiffs have been prevented from adding new stores, making upgrades to the system and adding and/or changing the status of users of Plaintiffs proprietary operational software.  Denying Plaintiffs access to their proprietary operational software has caused immediate and irreparable harm to Plaintiffs.  Because Plaintiffs' remedy at law is inadequate, Plaintiffs seeks an order requiring Defendants to provide access to Plaintiffs' operational software.

45.     Defendant, Jerry Hayward has threatened to delete Plaintiffs' operational software if Plaintiffs' do not acquiesce to Defendants' demands.  Deletion of Plaintiffs' operational software would cause immediate and irreparable harm to Plaintiffs.  Because Plaintiffs' remedy at law is inadequate, Plaintiffs seek temporary, preliminary and permanent injunctive relief.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Against Defendant Jerry Hayward)**

46.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

47.     The written assignment agreement and non-disclosure agreement are valid and enforceable contracts.  The confidentiality covenants and other provisions contained in the agreements

11

are reasonably necessary to protect legitimate protectable interests in software, business processes, trade secrets, confidential information, customer relationships, work force and goodwill.

48.     Further, as set forth in detail in the Background, Plaintiffs allege that the parties' mutual promises to perform the express oral agreements (including those legal obligations evidenced in correspondence and other writings) for services provided for development of PersonaMe and IndustraMe, the non-disclosure agreement, the assignment agreement, and for the subsequent 50-50 partnership to form and operate EncryptaMe, all of which is previously defined, as well as the implied agreement and conduct of the parties in performance thereof, were in exchange for valuable benefits and are therefore good consideration.  Plaintiffs have at all times performed the terms of the express oral agreements, written agreements, and the implied agreements with Defendant.

49.     Plaintiffs allege that in addition to being valid written and oral agreements supported by performance and written documentation, they constituted implied-in-fact contract whose terms were manifested by the conduct and intentions of the parties, including by Defendant Jerry Hayward's receipt of valuable contract payments.  Plaintiffs allege that even in the absence of an express contract, the conduct of the parties determines whether there is an implied-in-fact contract or some other tacit understanding between the parties.  Defendant breached the agreements as set forth in the Background. As a result of any one of these breaches of these agreements, Plaintiffs have been injured and faces irreparable injury.

50.     As a proximate result of Defendant's failure to perform and breach of the afore-mentioned agreements, Plaintiffs have been damaged in an amount exceeding the jurisdictional minimum of this court according to proof at trial, with interest thereon as permitted by law at the legal rate.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (Against All Defendants)

51.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

52.     Defendants breached the development agreement between Plaintiffs and Defendants by failing to timely provide required updates to the Medi-Match software.

53.     Defendants breached the development agreement between Plaintiffs and Defendants by failing to timely provide the PersonaMe software.

54.     Defendants breached the development agreement between Plaintiffs and Defendants by failing to timely provide the encryption component of the Medi-Match and/or PersonaMe software.

55.     Defendants have retained at least $200,000 of monies paid by Plaintiffs to Defendants for development of certain software for which no such software has been delivered.

56.     As a direct result of Defendants failure to provide software for which Plaintiffs have paid, Plaintiffs have lost a number of business opportunities, the value of which is to be determined at trial.

57.     Plaintiffs allege that in addition to being valid written and oral agreements supported by performance and written documentation, they constituted implied-in-fact contract whose terms were manifested by the conduct and intentions of the parties, including by Defendants receipt of valuable contract payments.  Plaintiffs allege that even in the absence of an express contract, the conduct of the parties determines whether there is an implied-in-fact contract or some other tacit understanding between the parties.  Defendant breached the agreements.  As a result of any one of these breaches of these agreements, Plaintiffs have been injured and faces irreparable injury.

58.     As a proximate result of Defendant's failure to perform and breach of the afore-mentioned agreements, Plaintiffs have been damaged in an amount exceeding the jurisdictional

13

minimum of this court according to proof at trial, with interest thereon as permitted by law at the legal rate.

**THIRD CAUSE OF ACTION**
**Fraud - Negligent Misrepresentation, Intentional Misrepresentation,**
**and Concealment**
**(Against Defendant Jerry Hayward)**

59.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

60.     At all times mentioned herein, Plaintiffs allege that the misrepresentations, concealments, and deceit as alleged in the Background by Defendant were intentional, and at least negligent, misrepresentations and active concealments, in that they were not competent and that they knew them to be false at the time the representations and active concealments were made, and at all times herein mentioned.

61.     At all times mentioned herein, Plaintiffs did not know, nor had any reason to know, that the aforesaid misrepresentations, deceit, and concealments by Defendant were not true.  Plaintiff would not have allowed Defendants to make the misrepresentations and active concealments to their material detriment, if they had knowledge thereof.

62.     At all times mentioned herein, Plaintiffs reasonably and justifiably relied on the aforesaid misrepresentations, concealments, and deceit by Defendant, and had no knowledge of them as more particularly described in the Background, and it was reasonable for them to do so.

63.     In actual reliance on the misrepresentations, deceit, and as a proximate result of the aforesaid misrepresentations, deceit, and active concealments by Defendant, Plaintiffs have been subsequently damaged thereby in excess of the jurisdictional minimum of this Court.

64.     Plaintiffs allege that the aforementioned conduct of Defendant was oppressive, fraudulent, and malicious, in that said actions were intended to cause damage to Plaintiff; was despicable conduct carried on with a willful and conscious disregard of the rights and safety of

Plaintiffs, that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights; and that said conduct was used by Defendant to deprive Plaintiffs of their legal rights and to otherwise cause injury, so as to justify an award of exemplary and punitive damages in amount commensurate with the wealth of Defendant, and each of them, and designed to punish and deter similar conduct.

**FOURTH CAUSE OF ACTION**
**Promissory Fraud**
**(Against Defendant Jerry Hayward)**

65.    Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

66.    Plaintiffs allege that Defendant has committed Promissory fraud, a subspecies of the cause of action for fraud and deceit.  Plaintiffs allege that Defendant promised to do something that necessarily implied the intention to perform;  Plaintiffs allege Defendants made promises without such intention, and that this resulted in an implied misrepresentation of fact that constitutes actionable fraud.

67.    Plaintiffs allege that Defendant: (a) Made promises regarding material facts without any intention of performing them, with respect to providing services for the development and creation of software for Plaintiffs, the representations in the Non-disclosure Agreements, the assignment agreement, and the representations to form a 50-50 partnership for EncryptaMe; (b) The existence of the intent not to perform at the time the promises were made; (c) The intent to deceive or induce Plaintiffs to enter into the software services agreement for PersonaMe, the Non-Disclosure Agreement, and the 50-50 partnership agreement for EncryptaMe, as alleged in the Background; (d) Reasonable reliance by Plaintiff; (e) Nonperformance by Defendant, the party making the promises; and (f) the proximate and actual cause of resulting damage to Plaintiff in an amount exceeding the jurisdictional minimum of this Court.

68.    Plaintiffs allege that the aforementioned conduct of Defendant was oppressive, fraudulent, and malicious, in that said actions were intended to cause damage to Plaintiff; was despicable conduct carried on with a willful and conscious disregard of the rights and safety of

15

Plaintiffs, that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights; and that said conduct was used by Defendant to deprive Plaintiff of his legal rights and to otherwise cause injury, so as to justify an award of exemplary and punitive damages in amount commensurate with the wealth of Defendant, and each of them, and designed to punish and deter similar conduct.

## FIFTH CAUSE OF ACTION
### Constructive Fraud
### (Against Defendant Jerry Hayward)

69.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

70.     Plaintiffs allege that as a fiduciary to a confidential partnership agreement for EncryptaMe, Defendant had an obligation to inform Plaintiff of all information he possessed that is and was material to the Plaintiffs' (the principal) interests.  Defendant's failure to share material information with Plaintiff was constructive fraud.  Defendant's conduct was the proximate and actual cause of resulting damage to Plaintiff in an amount exceeding the jurisdictional minimum of this Court.

71.     Plaintiffs allege that the aforementioned conduct of Defendant was oppressive, fraudulent, and malicious, in that said actions were intended to cause damage to Plaintiff; was despicable conduct carried on with a willful and conscious disregard of the rights and safety of Plaintiffs, that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights; and that said conduct was used by Defendant to deprive Plaintiff of his legal rights and to otherwise cause injury, so as to justify an award of exemplary and punitive damages in amount commensurate with the wealth of Defendant, and each of them, and designed to punish and deter similar conduct.

## SIXTH CAUSE OF ACTION
### Breach of Covenant of Good Faith and Fair Dealing
### (Against Defendant Jerry Hayward)

72.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

73.     Complaints allege that Defendant has breached the express and implied covenant of good faith and fair dealing which is present in all contracts.  This includes, but is not limited to, the Defendant's representations and obligations with respect to the services provided for development of PersonaMe, including the terms and conditions of the non-disclosure agreement, and the agreement to form and develop EncryptaMe.  Plaintiffs allege Defendant was obligated to not do anything unfairly to interfere with their rights.

74.     Plaintiffs allege that they entered into agreements with Defendants; that Plaintiffs did all, or substantially all, of the significant things that the contracts required them to do, and that they were excused from having to do things under the agreements; that all conditions required for their performance had occurred, or were waived or prevented from performance by Defendant; and that Defendant unfairly interfered with Plaintiffs rights to receive the benefits of the contract.

75.     Plaintiffs allege that as a proximate result of Defendant's failure to perform and breach of the agreements, Plaintiffs have been damaged in an amount exceeding the jurisdictional minimum of this court according to proof at trial.

### SEVENTH CAUSE OF ACTION
**Misappropriation of Trade Secrets**
**(Against all Defendants)**

76.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

77.     At all relevant times, Plaintiffs were in possession of confidential and trade secret information as defined by the Uniform Trade Secret Act of Utah, § 13-24-3(4).  The proprietary software, technology, business, and customer information of Plaintiffs constitutes trade secrets because they derive independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain

its secrecy.  Plaintiffs' confidential and proprietary trade secret information described herein is not and was not generally known to Plaintiffs' competitors in the industry.

78.     Plaintiffs alleged that Defendants have actually misappropriated and/or threaten to misappropriate Plaintiffs software and related trade secrets without Plaintiffs' consent in violation of Utah's Uniform Trade Secrets Act, Utah Code § 13-24-1 et seq.  Defendant Jerry Hayward cannot serve as a partner, principal, executive, or employee of Ciphertooth without utilizing and disclosing Plaintiffs' trade secrets and confidential information to other Defendants and third parties.  As such injunctive relief, pursuant to Utah Code section 13-24-3 is appropriate.

79.     Plaintiffs allege that as a proximate result of Defendants' misappropriation of Trade Secrets, Plaintiffs have been damaged in an amount exceeding the jurisdictional minimum of this court according to proof at trial.  As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have suffered damage to its business, reputation, and goodwill in excess of the minimum jurisdiction of this Court.  As such, Plaintiffs' seek damages under Utah Code section 13-24-3(1).

80.     In addition, because Defendants' misappropriation of Trade Secrets was willful and malicious, Plaintiffs seek exemplary damages and attorneys' fees under Utah Code sections 13-24-3(2) and 13-24-5.

### EIGHTH CAUSE OF ACTION
**Unjust Enrichment**
**(Against all Defendants)**

81.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

82.     Plaintiffs allege that all Defendants have been unjustly enriched as alleged in the Background.  Defendants received a benefit that they should not have received, including but not limited to claiming an ownership, right, title, and interest in the software, Trade Secrets, and other intellectual property, such as PersonaMe, and EncryptaMe.  Defendants will be unjustly enriched by the threatened and actual misappropriation of Plaintiffs' trade secrets and confidential information, and,

unless restrained, will continue to threaten to use, actually use, divulge, threaten to disclose, acquire and/or otherwise misappropriate Plaintiffs' trade secrets and confidential information.

83.     Upon information and belief, Defendants actual and threatened misappropriation has been willful and malicious in light of their formation and operation of Ciphertooth to unlawfully take, use, develop, and market the intellectual property and trade secret rights alleged hereinbefore, as well as Defendant Jerry Hayward's violation of software development and non-disclosure contracts prohibiting his current conduct and his deliberate violation of the contractual obligations.  Therefore, Plaintiffs are entitled to an award of exemplary damages and attorneys' fees pursuant to Utah Code sections 13-24-3(2) and 13-24-5.

## NINTH CAUSE OF ACTION
### Interference with Prospective Economic Advantage-Contractual Relations
### (Against all Defendants)

84.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

85.     Plaintiff has alleged in the Background that Defendant Jerry Hayward has unlawfully interfered with Plaintiffs software, intellectual property, trade secrets, and confidential information. Defendant has shared this information with other Defendants, in which all Defendants have formed Ciphertooth to continue developing and marketing Plaintiffs' valuable property rights.

86.     Defendants have negligently and intentionally interfered with Plaintiffs' valuable property rights, including with existing and potential customers.  Defendants are now actively promoting the valuable software, trade secrets, and other intellectual property of Plaintiffs for their own personal benefit and gain, to the material detriment of Plaintiffs.

87.     Plaintiffs have properly alleged an economic relationship created by their valuable property rights alleged herein, which has created the probability of future economic benefit. Defendants have committed negligent and intentional acts to disrupt the relationships; which has proximately caused damages as a result thereof.

19

88.     Plaintiffs allege that the aforementioned conduct of Defendants was oppressive, fraudulent, and malicious, in that said actions were intended to cause damage to Plaintiff; was despicable conduct carried on with a willful and conscious disregard of the rights and safety of Plaintiffs, that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights; and that said conduct was used by Defendants to deprive Plaintiffs of their legal rights and to otherwise cause injury, so as to justify an award of exemplary and punitive damages in amount commensurate with the wealth of Defendants, and each of them, and designed to punish and deter similar conduct.

## TENTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Defendant Jerry Hayward)

89.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

90.     That at all times Defendant Jerry Hayward had a fiduciary duty (derived from a confidential relationship) to not commit false representations, concealment, and harm the interest of Plaintiffs, or to commit the other unlawful acts alleged in the Background, which amounted to a breach of fiduciary duty.

91.     That as a proximate result of Defendants failure to perform and breach of fiduciary duty, Plaintiff has been damaged in an amount exceeding the jurisdictional minimum of this court according to proof at trial.

## ELEVENTH CAUSE OF ACTION
### Conversion
### (Against all Defendants)

92.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

93.     As a direct result of the misconduct of Defendants as alleged in the Background, Defendants and each of them wrongfully hold and refuse to transfer to Plaintiff certain monies and property as to which are rightfully owned by and the property of Plaintiff.

94.     As a direct and proximate result of Defendants continued wrongful withholding on said monies and property as to which are rightfully owned by and the property of Plaintiffs, they seek a declaration that they are the rightful legal and/or equitable owner and holder of said software, property, trade secrets, and intellectual property rights, and an order that Defendants and each of them hold said property, and monies and property derived therefrom, in constructive trust for Plaintiffs.   Plaintiffs therefore requests that this Court place a constructive trust on all real and personal property held, acquired, invested, accumulated, and purchased, in order to prevent Defendants unjust enrichment and since equity compels the restoration to Plaintiffs of property to which Defendants are not justly entitled.

**TWELFTH CAUSE OF ACTION**
**Constructive Trust**
**(Against all Defendants)**

95.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

96.     As a direct result of the misconduct of Defendants as alleged in the Background, Defendants and each of them wrongfully hold and refuse to transfer to Plaintiff certain monies and property as to which are rightfully owned by and the property of Plaintiff.

97.     As a direct and proximate result of Defendants continued wrongful withholding of said monies and property which are rightfully owned by and the property of Plaintiffs, Plaintiffs seek a declaration that they are the rightful legal and/or equitable owner and holder of said software, trade secrets, and intellectual property rights, and that Defendants and each of them hold said property in trust for Plaintiffs.   Plaintiff therefore requests that this Court place a constructive trust on all real and personal property held, acquired, invested, accumulated, and purchased, in order to prevent Defendants unjust enrichment and since equity compels the restoration to Plaintiffs of property to which Defendant are not justly entitled.

### THIRTEENTH CAUSE OF ACTION
### Declaratory Relief - No Breach of Contract by Plaintiffs
### (Against all Defendants)

98.     Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

99.     Defendants agreed to allow Plaintiffs to suspend payments to Plaintiffs.

100.    As a result, Plaintiffs fully complied with all obligations under their agreement with Defendants.

101.    Defendant's prior breach(es) of their agreement(s) with Plaintiffs excused any breach by Plaintiffs.

102.    Plaintiffs request this Court to declare that Plaintiffs' did not breach their agreement with Defendants.

### FOURTEENTH CAUSE OF ACTION
### Declaratory Relief - Good Faith and Fair Dealing by Plaintiffs
### (Against all Defendants)

103.    Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

104.    At all times, Plaintiffs acted fairly and in good faith in their dealings with Defendants.

105.    As a result, Plaintiffs did not breach any express or implied covenant of good faith and fair dealing with Defendants.

106.    Plaintiffs request this Court to declare that Plaintiffs' did not breach any express or implied covenant of good faith and fair dealing with Defendants.

### FIFTEENTH CAUSE OF ACTION
### Declaratory Relief - No Defamation or Trade Libel
### (Against all Defendants)

107.    Plaintiffs hereby incorporate by reference the preceding and foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows.

108.    Defendants have made no verbal or written statements regarding Defendants that are either disparaging or not factually accurate.

109.    Accordingly, Plaintiffs have not committed any acts of defamation or libel against Defendants.

110.    Plaintiffs request this Court to declare that Plaintiffs' have not engaged in any acts of defamation or libel against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

A.    For general, special, and consequential damages, statutory and at law, according to proof at trial.

B.    For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as hereinafter set forth, during the pendency of this action.

C.    For a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining all Defendants and all persons acting or claiming to act under, in concert with, or for Defendants, or any of them from:

(1)    Continuing to use Plaintiffs software, trade secrets, and other intellectual property rights;

(2)    Engaging in the solicitation of any customers using the property described in (1);

(3)    Using, copying, dealing with, disclosing, trading, and otherwise exploiting or misappropriating the property described in (1) in order to, including, but without limitation, communicate with any third parties for any and all reasons or purposes.

(4)    Turning over all original source code, software, trade secrets, intellectual property, and other documents and items or files of any kind, passwords and server account information,

actively or passively, whether in written or electronic form, that relate in any way to Plaintiffs' rights described in (1).

D.      For judgment that Plaintiffs are entitled to damages suffered as a result of Defendants' breach of contract, in an amount to be determined at trial.

E.      For judgment that Plaintiffs are entitled to damages suffered as a result of Defendants' misappropriation of Plaintiffs' trade secrets, in addition to any profits of the Defendants that are attributable to the misappropriation of Plaintiffs' trade secrets, in an amount to be determined at trial.

F.      For a permanent injunction enjoining and restraining Defendants from directly or indirectly using, transferring, disclosing, assigning or selling Plaintiffs' trade secrets.

G.      Appointing a special master to review, on a regular basis, Defendants' compliance with the requested injunctive relief and requiring Defendants, and each of them, to provide a monthly-verified statement of compliance that Defendants, and each of them, have not used or disclosed any of the software, trade secrets, and confidential information of Plaintiffs.

H.      For an accounting from Defendants of their misuses of Plaintiffs software and property rights, an accounting of all funds unlawfully received and disbursed to Defendants as set forth herein above, and for payment to Plaintiff of the amounts due from Defendants as a result of the accounting, according to proof at trial.

I.      For a constructive trust for the benefit of Plaintiffs to be imposed upon all funds, assets, revenues and profits Defendants have or will derive from their unlawful acts and their actual or threatened misappropriation of software, intellectual property, and other rights.

J.      For damages following a bifurcated punitive and exemplary damages phase of the trial, according to proof;

K.      For a determination of the unjust enrichment of Defendants, and a disgorgement of all property, receipts, income, profit, and other consideration received by them;

24

L.      For a judicial determination of the proper exercise of the rights and duties of Plaintiffs and Defendants; A set aside order; An equitable and/or Judicial Lien; A determination of the amount of restitution, if any, that Defendants must make to Plaintiffs; and a judicial determination of all of the parties' rights and duties with respect to the allegations contained herein.

M.      For a declaration that Plaintiffs are the 100% owner of all software, trade secrets, intellectual property, and other rights alleged herein, both legal and equitable, and that Defendants have no interest, either legal or equitable, therein.

N.      For a declaration that Plaintiffs' did not breach their agreement with Defendants.

O.      For a declaration that Plaintiffs' did not breach any express or implied covenant of good faith and fair dealing with Defendants.

P.      For a declaration that Plaintiffs' have not engaged in any acts of defamation or libel against Defendants.

Q.      For pre- and post-judgment interest as allowed by law.

R.      For such other and further relief as the Court deems just, proper, fair, as a matter of law, and equitable.

S.      For reasonable attorneys fees as permitted by law; and

T.      For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.


DATED this 29th day of January 2014.

                Respectfully submitted,

                MORRISS O'BRYANT COMPAGNI P.C.


                /s/ Frank W. Compagni
                Frank W. Compagni
                Bretton L. Crockett